**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Arthur M. FRANKE, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Norman G. LINDSEY, Defendant-Appellant.**

Nos. 16673, 16674.

United States Court of Appeals Seventh Circuit.

April 7, 1969.

Rehearing Denied April 24, 1969.

Palmer K. Ward, Indianapolis, Ind., for appellants.

Paul C. Summitt, Crim. Div., Dept. of Justice, Washington, D. C., K. Edwin Applegate, U. S. Atty., Sidney Milun, Asst. U. S. Atty., Indianapolis, Ind., for appellee.

Before HASTINGS, Senior Circuit Judge, and KILEY and FAIRCHILD, Circuit Judges.

KILEY, Circuit Judge.

In a joint jury trial, defendants were found guilty of passing counterfeit money in violation of 18 U.S.C. § 472.[1] Both have appealed. We affirm.

In their joint brief defendants contend the district court violated their rights under the Fifth Amendment Double Jeopardy Clause, and that the court erred in denying their pretrial motion to suppress evidence gained by an unlawful search in violation of their Fourth Amendment rights.

We find no merit in the double jeopardy contention. The original indictment was returned March 18, 1966. The case was called for trial on September 19, 1966, and defendants filed a motion to dismiss the indictment for insufficiency to state an offense, and during the selection of the jury entered an oral motion to dismiss for a mistake in the date of the alleged offense. The original indictment alleged incorrectly that the offense occurred on December 8, 1966. After the jury was sworn, the indictment was dismissed without prejudice because of the incorrect date. On October 13, 1966, the new indictment was returned, correcting the date of the alleged offense to December 8, 1965, and charging the offense originally charged. On September 8, 1967, the district court denied defendants' motion to dismiss the indictment on the ground of double jeopardy.

We think that since the original indictment was dismissed on defendants' motion the denial of the double jeopardy motion was proper. See United States v. Ewell, 383 U.S. 116, 124–125, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966), where defendants' convictions were set aside on their own motion and the Double Jeopardy Clause was found not to bar retrial for the same offense. See also United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964), where the Court held the Double Jeopardy Clause not violated by retrial of the same alleged crimes after Tateo's conviction on a plea of guilty had been set aside on his motion. It is enough for us to say that here defendants' motions caused dismissal of the indictment—even though the order of dismissal came after the selection of jury—and retrial under the corrected indictment is not precluded by the Double Jeopardy Clause. If, after convictions are overturned at instance of defendants, retrials are not barred by the Double Jeopardy Clause, a fortiori, defendants' trial under the corrected indictment here is not barred.

Defendants rely on Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). In Downum the jury was discharged because the prosecution was not ready to proceed. Pleas of former jeopardy were denied and the Supreme Court reversed. The Supreme Court in Tateo said that Downum was not inconsistent with the Tateo rule. 377 U.S. at 467, 84 S.Ct. 1587. Since we follow Tateo it follows that our decision is not inconsistent with Downum. Ipso facto our decision here is not inconsistent with Cornero v. United States, 48 F.2d 69, 74 A.L.R. 797 (9th Cir. 1931), a case involving facts similar to Downum, and which was approved in Downum, 372 U.S. at 737, 83 S.Ct. 1033. We hold that the district court did not err in de-

---

1. § 472.  Uttering counterfeit obligations or securities

Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

nying defendants' motions claiming double jeopardy.

■ Before the trial under the corrected indictment, the district court denied defendants' motions to suppress evidence obtained by the arresting agents on the ground that they did not have probable cause to arrest. The court's reason for the ruling is that the "informer's" word corroborated by the electronically gained evidence, furnished probable cause for the arrest of defendants, search of their car, and seizure of counterfeit money. We think the information given to the agents by the "informer" without regard to the eavesdropping evidence was sufficient to establish probable cause.

The "informer," named Barr, was an erstwhile confederate of defendants. He had, a week before arrest of defendants, been himself "technically" arrested on counterfeiting charges and had then begun to cooperate with the Secret Service agents in setting up a meeting with defendants for sale of counterfeit money. His testimony at the trial was substantially the same as that which he gave in the hearing on the motion to suppress. Even though Barr had not been used as an informant prior to this occasion, we think that the arresting officers had sufficient reason to believe him.

Defendants did not argue on appeal whether admission of the agents' testimony at trial regarding what they heard through electronic eavesdropping was fruit of an unlawful invasion of their Fourth Amendment right of privacy. See Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). We have decided to take up this question of the Fourth Amendment violation which has been raised, although obliquely.

We entered an order in this court deferring decision on the case before us pending this court's final decision in United States v. White, 405 F.2d 838 (7th Cir. 1969), thinking that decision on this Fourth Amendment eaves-

dropping question could be affected by the *White* decision. We now find that it is unnecessary to reach the question whether *White* controls here. Assuming, but not deciding, that the testimony of the agents was fruit of an unlawful invasion of defendants' privacy under the Fourth Amendment, and therefore should not have been considered, we hold that the error in denial of the motion to suppress and use of the testimony at the trial does not require reversal of defendants' convictions. The reason is that—making the assumption we have made—it is our "belief that * * * [the use of the agents' testimony] * * * was harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1964). We think this, unlike the situation in *Chapman,* is a case in which "absent the constitutionally forbidden" testimony of the agents, "honest, fairminded jurors could not very well" have brought in not-guilty verdicts.

The principal government witness was Barr. He had known defendants for several years and had previously engaged in an illicit counterfeiting enterprise with them. When he set up the first meeting with Franke and the second meeting with both defendants he was "technically" under arrest for counterfeiting. His evidence about his direct conversations and actions establishing the arrangements for the meetings at which "purchases" were made, the meetings with defendants and incriminating statements made by them, the delivery of the counterfeit money, all established directly or by inference the elements of the offense alleged. There was no evidence to refute Barr's testimony, and his cross-examination was of no consequence.

The testimony of the agents was that some of the conversations they overheard on the Kel-set were inaudible. What they did hear was in fragments. As to some, the speaker was not identified. As to most, the agents' testimony was that what was heard was "something to the effect that," etc.

961

We conclude that assuming, but not deciding, that a constitutional error was committed by admitting the eavesdropped testimony of the agents, on authority of the rule in *Chapman,* we hold that the error was harmless beyond a reasonable doubt.

Affirmed.